RECEIVED AUG 20 2019

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 2:17-CR-1027(CJW) |
| Plaintiff, ) | Prior Case No: 2:06-CR-2012(LRR) |
| v. ) | |
| ) | MOTION FOR MODIFICATION |
| MONTEL THEOPOLIS JONES, ) | OF SUPERVISED RELEASE |
| ) | PURSUANT TO 18 U.S.C. §3583(e) |
| Defendant. ) | |

**NOW COMES** MONTEL THEOPOLIS JONES, motioning this Court *in propria persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a "time already served" duration. This request is made pursuant to title 18 United States Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c). Under the same rule of criminal procedure, no hearing is requested in this matter.

This matter is brought under §3583(e) but for two separate reasons. The first is statutory and required: I was sentenced to 8 years of supervised release without legal authority to do so. As this case is long passed the window to file a Rule 35(a) correction, a §3583 motion is the appropriate avenue to correct this problem.

Second, I ask this court as a discretionary act to terminate the remaining 11 months of my supervision because such is in the interests of justice.

## I. PROCEDURAL HISTORY

1. On March 22, 2007 I was sentenced to 210 months in prison after pleading guilty to Counts one count of Distribution of 10.56 grams of Cocaine Base within 1,000 Feet of a Protected Location, in violation of Title 21 U.S.C. §846 and §860(a). I was also sentenced to 8 years of supervised release pursuant to the punitive statute in 21 U.S.C. §841(b)(1)(B). See 2006 case docket number 51.

2. My sentence of incarceration was reduced twice, both because of retroactive Sentencing Guidelines Manual amendments that were made retroactive. First, in 2008, my sentence was reduced to 168 months. See 2006 case docket number 71. Then, after an initial denial, I was granted one more reduction pursuant to Amendment 750 to 135 months. See 2006 case docket number 80.

3. I was released from incarceration on July 10, 2015, and have now served four years and one month on supervision. My supervision began in the District of Nevada, where I lived with my mother after incarceration. Jurisdiction was transferred there in March of 2016. See 2006 case docket entry 81.

4. I moved back here to the Northern District of Iowa in 2017, and my case was then transferred back to this District on December 6, 2017, where I was assigned this new case number. See current docket entry 1.

Page 2

5. I failed on supervision after I moved back here. I was getting rides to my Urinalysis Phase tests by my cousin. On one instance we were pulled over on the hour-plus drive from Dubuque to Cedar Rapids. That one stop resulted in a missed UA appointment, realizing that my cousin was a felon (who I was associating with), and the follow up UA tested positive for Marijuana.

6. My supervision was then revoked, I was given two weekends in county jail, 20 hours of community service, and my supervision remained in tact, still tolling from my 2015 release date. Current docket entry 16.

7. In April of 2019, my case was reassigned from the honorable Judge Reade, to the honorable C.J. Williams.

## II. JURISDICTION

8. This Court relinquished jurisdiction to the District of Nevada, and then re-accepted §3605 jurisdictional transfer, see above, and thus is the correct venue to request this sentencing adjustment.

## III. AUTHORITY

9. This Court is granted the authority to modify or terminate a term of supervised release by 18 U.S.C. §3583(e)(1) which states,

"The court may, after considering the factors set for in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—

> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and in the interests of justice.
>
> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;"

10. The applicable Federal Rule of Criminal Procedure is 32.1(c), which allows for modifications of supervised release. This rule requires a hearing unless the relief sought is favorable to the defendant and that an Assistant United States Attorney has received notice of the relief sought and is given reasonable opportunity to object (Fed R. Crim P (2)(B) & (C)).

11. Committee notes to this procedural rule don't spend much time on termination requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without

Page 4

such a hearing once the government is given an opportunity to proffer a written objection if it chooses to do so.

12. Paraphrased, the §3553(a) cross-referenced sentencing factors that are to be considered for an early termination or modification request are:

>   §§(a)(1): The nature and circumstances of the offense;
>   §§(a)(2)(B): To afford deterrence to criminal conduct;
>   §§(a)(2)(C): To protect the public from future crimes;
>   §§(a)(2)(D): To provide education and job training, provide medical care or other correctional treatment;
>   §§(a)(4): The kinds of sentences available in the guidelines;
>   §§(a)(5): In line with relevant policy;
>   §§(a)(6): Avoiding unwarranted differences in sentence between similar defendants with similar conduct;
>   §§(a)(7): To provide restitution to any victims.[1]

## IV. CONTROLLING PRECEDENT

13. "We afford the district court 'broad discretion' in this area... recognizing that it is in the best position to evaluate the circumstances of each individual defendant." *United States v. Mosby*, No. 12-3541 (8th Cir. 2013) quoting *United States v. Davies*, 380 F.3d at 329 at 332.

14. "A district court may modify the conditions imposed on a term of supervised release even when, as in the present case, the modification is based only on evidence that was available at the original sentencing. This is because the statute

---

[1] It is noteworthy that §§(a)(2)(A) is missing from this list, indicating that congress did not intend supervised release to be punishment, or be a reflection of the seriousness of the original offense, but rather a buffer between the restrictions of incarceration and the freedom of full release.

Page 5

that authorizes district courts to modify the conditions of supervised release does not require new evidence, nor even changed circumstances in the defendant's life." *Davies, id.* at 332.

15. "The Supreme Court has described supervised release as "the decompression stage" between prison and full release." *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015) (Quoting *Johnson v. United States,* 529 U.S. 694, 709 (2000)). As will be seen below, this decompression stage, and the further need for supervision, no longer applies in my case.

## V. POLICY

16. The policy stated here, as well as the precedent quoted in the previous section, apply only to the discretionary early termination of supervised release, and not the modification that I believe is mandated by statute.

17. The relevant section of the Sentencing Guidelines Manual can be found in §5D1.2. The policy here made a sharp change in 2011 when the amendments to the manual that year specifically changed this section to encourage early termination in appropriate cases, rather than in cases which show "unforeseen circumstances" or "exceptional behavior".

Page 6

18. These two phrases are used a lot to dissuade district courts from granting early termination requests where defendants have demonstrated no further need for supervision. They come from an opinion from the Second Circuit in *United States v. Lussier*, 104 F.3d 32 (2nd Cir. 1997), and since the 2011 changes to the guidelines manual, policy has shifted away from this arbitrary and high bar.

19. "The guidelines encourage . . . [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or other addiction, but may then terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."[2] U.S.S.G. §5D1.2 cmt. n. 5 (Quotations omitted).

20. Probationary policy in regards to recommending early termination in supervised release cases comes from Monograph 109[3]. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they **"should consider the suitability of early termination for offenders as soon as they are statutorily eligible."**

---

2 From "Primer: Supervised Release" (Office of General Counsel, United States Sentencing Commission; 2015). Available at: https://www.ussc.gov/sites/default/files/pdf/training/primers/2015_Primer_Supervised_Release.pdf
3 Guide to Judiciary Policy, Volume 8, Part E: Supervision of Federal Offenders (Monograph 109).

21. When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b)

> *(1) Stable community reintegration;*
> *(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;*
> *(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;*
> *(4) No history of violence;*
> *(5) No recent arrests or convictions;*
> *(6) No recent evidence of alcohol or drug abuse;*
> *(7) No recent psychiatric episodes;*
> *(8) No identifiable risk to the safety of any identifiable victim; and,*
> *(9) No identifiable risk to public safety based on the Risk Prediction Index."*

22. Later in that same section it states that the existence of outstanding financial obligations *per se* does not adversely affect early termination eligibility (§§c), and failure to meet criteria listed should not automatically exclude an offender from further consideration (§§d).

## VI. ARGUMENT FOR STATUTORY REDUCTION

> **"Authorized Terms of Supervised Release-** Except as otherwise provided, the authorized terms of supervised release are—
>
> (1) for a Class A or Class B felony, not more than five years;
> (2) for a Class C or Class D felony, not more than three years; and
> (3) for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year." 18 U.S.C. §3583(b).

23. I was sentenced as a first-time offender with a criminal history category of I. In 21 U.S.C. §841 there are two penalty subsections that dictate specific terms of

Page 8

supervised release which trigger the "Except as otherwise provided" clause of §3583(b), above. Those are §841(b)(1)(A) & (b)(1)(B), which mandate 10 years for a defendant with a prior §841 or prior cognate conviction under §§(b)(1)(A), and 8 years of supervised release with a prior §841 or prior cognate conviction under §§(b)(1)(B).

24. Given that I had no triggering predicate offenses which would trigger the longer mandatory supervised release terms as provided in those sections, then I would fall under the mandatory minimum of 4 years as provided by §(b)(1)(B), and the maximum of 5 years as limited by §3583(b). Thus the applicable statutory ranges available to me at sentencing were 4-5 years of supervised release, and any sentence outside of that range violates §3553(a)(4).

25. There is a question of the "tripling effect" of the punitive allowances of 21 U.S.C. §860(a), but all of the tripling clauses apply only to incarceration, and not supervised release. Thus the limitation of first time §841(b)(1)(B) and §3583(b) remain in place, and the 4 year minimum and 5 year maximum terms for supervised release in my case are applicable.

26. Given the analysis above, it is appropriate and needed to reduce my term of supervised release to between 4 and 5 years in total term. And since I have already

served more than 4 years, I ask this court to use it's discretion in the section below to reduce such term to "time served" which is both within the applicable statutory guidelines and in the interests of justice.

## VII. ARGUMENT FOR IMMEDIATE TERMINATION

27. Since §3553(a)(2)(A) is missing from the cross-referenced factors in §3583(e), it follows that supervision is not intended to punish, but to transition. The Supreme Court clarified this in *Johnson v. United States,* 529 U.S. 694, 709 (2000), when supervised release was described as the "decompression stage" of a sentence. See also *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015).

28. If, then, the transition or decompression from incarceration, and there are no other goals of supervision (or special conditions of supervision) left to achieve, then the purpose of supervision has been exhausted and early termination is warranted. The interests of justice are served, by statutory definition and precedent, by early release in these situation.

29. Regarding §3553(a)(2)(B) & (C), I am of low risk to re-offend. Not only am I committed to a life free of criminal conduct, prosecution, and incarceration, but there are statistics beyond the USPO risk-assessment tool that points to this conclusion. Beyond criminal history categories, criminal-history points themselves

Page 10

are an excellent indicator of the risk of recidivism and re-arrest. A 2017 study published by the Sentencing Commission concludes, specifically, offenders with zero criminal history points and no prior contact with the criminal justice system, "there is an 11.7 percentage point difference [lower] in rearrest rates..." compared to a zero-point offender with prior contact with criminal justice Zero-point offenders show a much lower re-conviction rate (17.4%), almost 4x less likely than an offender with 15+ points (66.2%)[4] I was sentenced in Criminal History Category of I, placing me in the category of offenders who have the lowest risk of recidivism.

30. Second, the effect of early termination, as requested in this motion, reduces my likelihood to recidivate. A recent recidivism study by the AOUSC-OPPS examined a cohort of offenders whose supervision terms expired or were terminated early in fiscal year 2005. The study found that during the 36-month follow-up period, "offenders granted early termination do not pose a greater safety risk to the community" than offenders who successfully served the entire supervised release term imposed by the sentencing court. "In fact, early-term offenders in this study presented a lower risk of recidivism than their full-term counterparts. Not only were early-term offenders charged with a new criminal offense at a lower rate than

---

[4] *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* ; United States Sentencing Commission, 2017, available at [http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf]

Page 11

full-term offenders, they were charged with proportionally fewer felonies…"[5]

31. I am gainfully employed as a supervisor at the Nordstrom's Warehouse in Dubuque, where I have been for the last 8 months. Before that I spent years as a manager in Walmart in both Las Vegas and here in Iowa. I've spent no time unemployed since getting my first job out of prison and have no prospects of doings so.

32. I have no educational or vocational needs that probation could help with. I also do not have any medical or housing concerns that would make further supervision necessary. Thus, §3553(a)(2)(D) weighs in favor of this request.

33. I've gone through sentencing ranges for supervision exhaustively above, and my sentence was made above the statutory ranges. The range applicable in my case is between 4 and 5 years, of which I have already served more than four. Thus §3553(a)(4) & (5) weigh in my favor.

34. To stay in line with sentencing decisions in similar cases with similar defendants, §3553(a)(6) addresses the need to avoid unwarranted disparities between cases with such similarities. In regards to my request here, other cases where early

---

5   See James L. Johnson, *Are Early Terminated Offenders a Greater Risk to the Community? NEWS AND VIEWS*, *Vol. XXXV, No. 2, at 1 (Jan 18, 2010)*. Published by AOUSC-OPPS

termination requests have been granted are of particular applicable. See *United States v. Gossett,* No. 2:06-CR-0172-4 (VAED, 2017 release) where defendant Gossett was terminated after serving two of his 5 year term of supervision for his conviction of 21 U.S.C. §846 charges. See also *United States v. Henry*, No. 2:13-CR-10431 (MIED, 2017 release) where defendant Henry was convicted on one count of Conspiracy to Distribute "Crack" Cocaine, was sentenced to 5 years of supervision, and was discharged after serving 4 years of supervision. These two cases together weigh §§(a)(6) in my favor.

35. Where probationary policy factors are concerned, I am fully in line with what Monograph 109 identifies as a suitable candidate for early termination of supervised release.

36. I have integrated into my community well and have completed all goals of supervision that have been put to me. I am of no risk to the community insofar as recidivism risk is concerned (which I detailed above), and I have no financial obligations remaining.

37. I have no recent arrests, no history of violence, no drug or alcohol use in the past years, and have no psychiatric problems to address.

Page 13

38. With less than a year remaining on the term of supervision that I believe is compelled in this case, I ask this court exercise it's discretion and allow me to move on with the next chapter in my life.

## CONCLUSION

Considering the cost of supervision, and based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on this __19__ day of __Aug__, 2019.

/s/ *Montel Jones*
MONTEL THEOPOLIS JONES
*Pro Se* Defendant, Movant

Page 14

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, MONTEL THEOPOLIS JONES, do hereby certify that I have served a true and correct copy of the following document,

**MOTION FOR MODIFICATION
OF SUPERVISED RELEASE
PURSUANT TO 18 U.S.C. §3583(e)**

upon the court and the office of the United States Attorney:

**Daniel C Tvedt**
US Attorney's Office
Northern District of Iowa
111 7th Avenue SE
Box 1
Cedar Rapids, IA 52401

**Clerks of the U.S. District Court**
Northern District of Iowa – Eastern [Dubuque]
Criminal Filings
111 Seventh Avenue SE
Cedar Rapids, IA 52401-2101

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the __19__ day of __Aug__, 2019.


_____
MONTEL THEOPOLIS JONES
*Pro Se* Movant

PRESS FIRMLY TO SEAL          PRESS FIRMLY TO ~          PRIORITY MAIL
                                                         POSTAGE REQUIRED

**PRIORITY MAIL**

FROM: Montel Jones
2280 N Grandview Ave
Dubuque, IA 52001

TO:
Clerks of the U.S. District Court
Northern District of Iowa
111 Seventh Avenue SE
Cedar Rapids, IA 52401



US POSTAGE PAID $7.35
Origin: 52001
08/19/19
PRIORITY MAIL 2-DAY®
0 Lb 10.00 Oz
EXPECTED DELIVERY DAY: 08/21/19
SHIP TO:
111 7TH AVE SE
CEDAR RAPIDS IA 52401-2101
USPS TRACKING NUMBER
9505 5119 2867 9231 3253 77